tice which may be found convenient and beneficial, in proceeding according to the course of the common law, might prove not only inconvenient but embarrassing to the course of justice in a court whose modes of proceeding are widely different. The course of proceeding in the admiralty bears a much closer analogy to that of a court of equity than to that of the common law, and the objections to admitting multifarious and unconnected matters into a suit apply with nearly the same force in the admiralty as in equity.

But there is another objection to the indefinite liberty of cumulating actions as a matter of right, which applies with particular force to the jurisdiction of the admiralty; it is its unavoidable tendency to delay the progress of suits. In maritime causes, and particularly in those to which mariners are parties, it is of primary importance that justice should be promptly administered. Men whose occupation is upon the sea, and who are dependent on the opportunities of the wind and weather, have but little time to give to their business on shore. They cannot, without great inconvenience and loss, remain at home to await the slow progress of a lawsuit in the ordinary courts of justice. In most maritime nations special courts are established to hear such causes, which proceed summarily, that the interests of navigation may not suffer from the delays of the law. It is from this motive, as Kuricke informs us. that an appeal is not allowed by the Hanseatic law in maritime causes, and in all courts instituted for the trial of these causes, the proceedings are summary and the process short. Kuricke, Quæst. Illust. 27. The action of courts of admiralty, in which these causes are usually heard, is prompt. It is always open to suitors, and does not require them to await its regular terms, but takes up causes when the parties apply, and hears them as soon as they are prepared. "Ut levato velo istæ causæ cognoscantur" (Code 11, 5, 5) is the order of the civil law in causes of wreck; and the expression is often applied to all summary causes in the admiralty. Its modes of proceeding are plain, simple, and direct, and it studiously excludes from them everything that tends to prolixity. It is obvious that nothing could tend more directly to draw suits out to an inconvenient length than the allowing as a general practice, independent actions, each depending on its own proper evidence, to be consolidated into one suit, by which each cause must necessarily await the slow progress of all the rest. If the libellant as a matter of right may unite in one suit independent and unconnected actions. a mariner may join in a libel for wages earned in one voyage a cause of damage in another. It is easy to see the oppressive use that might be made of the process of the court in this way, and that masters of vessels might be subjected to most inconvenient embarrassments in their business, or be obliged to buy their peace when there is no just ground of complaint. "Mare frequentantium ventisque commodis utentium intersit, controversias eorum quantum fieri potest celerrime expediri." Locenius, De Jure Mar. lib. 3, cap. 10, 2.

But there is one objection to the union of these two actions in one libel founded on the different qualities of the master's liability. It is true that he is personally liable for the wages, but he is not liable for them as for his own proper debt. He is liable in his quality as master, and if he pays them, he has his remedy against the owners. But the damages which are recovered against him for a personal wrong are his own proper debt. There is a manifest irregularity and impropriety in mixing up, in one suit, actions to which a party is liable in different characters. The common law will not allow the joinder of actions against the defendant to which he is liable in different characters, as his own proper debt, with one which he owes as executor or administrator. My opinion is, that these two actions cannot be united in one libel, at least, if the master excepts to the union. I do not say that if no objection was made the court might not adjudicate on both actions in one suit, making separate decrees in each case. But if the objection is taken, my opinion is that it must be allowed. In Ryan's Case, referred to as having been decided in the district court of Massachusetts, it is not stated whether there was an exception to the joinder. The statement is that the joinder is allowed but not required. I presume allowed when no exception is taken.

The exception of the respondent is allowed for the first cause assigned in support of it.

[Upon an amended libel the plaintiff recovered $27.65 for wages. Case No. 3,597.]

PRATT (UNITED STATES v.). See Case No. 16,082.

# Case No. 11,378.
## PRATT et al. v. WILLARD et al.
### [6 McLean, 27.] [1]

Circuit Court, D. Michigan.  June Term, 1853.

TRIAL—PROOF OF PARTNERSHIP—ACTION UPON NOTE.

This action was brought on a promissory note, no affidavit by defendants [Willard & Sweet], denying their signatures, having been filed. A question to the court was made, whether the partnership of the plaintiffs must be proved. The court held that such proof was not necessary. The note was given to the plaintiffs as partners, and the defendants, by not filing an affidavit, have admitted their signatures, under the rule of court. and such admission extends to the facts which appear on the face of the note.

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

Therefore proof of the partnership of plaintiffs is unnecessary.

[Cited in Ames v. Quimby, 10G U. S. 346, 1 Sup. Ct. 120.]

[Cited in brief in Locke v. Leonard Silk Co., 37 Mich 480.]

Mr. Walker. for plaintiffs.

Backus & Harbaugh, for defendants.

[Nowhere more fully reported; opinion not now accessible.]

PRATT, The ANN C.  See Case No. 409.

PRATT, The DAVID.  See Case No. 3,597.

## Case No. 11,379.

### PRAY et al. v. The RECOVERY.

[Bee, 393.] [1]

Admiralty Court, Pennsylvania. 1780.

PRIZE—VESSEL IN SIGHT—CLAIM OF SHARE—COMMISSION.

1. The right, under which a vessel in sight may claim a share of the prize taken by another vessel, is founded in a presumption of law, which supposes a vessel so in sight, and armed, and prepared for battle, to have induced a surrender.

2. A vessel not commissioned, must be considered as a mere merchantman.

HOPKINSON, J.

Job Pray and Aaron Stockholm engaged and took as prize, the brig Recovery, a vessel belonging to the enemy; the schooner Livingston, a vessel belonging to Robert Morris, the claimant, being in sight at the time of the capture. Pray and Stockholm were duly commissioned by congress to cruize as privateers against the enemy; but Kelly, the master of the Livingston, had no such commission. The counsel for the claimant urged, that it was a principle of law—that prizes taken by vessels not commissioned, inured to the sovereign power, and exhibited a transfer from congress, of all their title to any share in this prize to Robert Morris; empowering him to prosecute a claim, in the name of the United States, but for his own benefit. And the authorities cited in support of this doctrine were Carth. 474, and 12 Mod. 134. But neither of these authorities apply strictly to the present case. In the one, the prize was a wreck, stranded on the shore, and great part of the booty was taken on shore by the crews of vessels not commissioned; in the other, a vessel without a commission, took a prize, and carried her into a foreign port, where the captor sold her, and converted the money to his own use. In both cases, the booty was taken by persons not commissioned to take; no vessels duly commissioned assisting in, or being present at the time of the capture. But in the present case, the prize was in fact taken by vessels regularly authorized for the purpose, and the noncommissioned vessel only in sight at the time of the battle. In the cases cited, no persons were present or assisting to whom the booty could be legally adjudged. Here the libellants, the real captors, were duly commissioned to take, and empowered by their commissions, and the resolves of congress, to possess and enjoy the property so legally taken. A vessel not commissioned must be considered as a mere merchantman; and according to Lee, 237, if a merchant vessel meets an enemy in the course of the voyage, and takes her, the prize shall belong to the captor; but if she goes out of her course to seek plunder, she may be deemed a pirate. Now, it is not pretended that the Livingston took the prize in question; on the contrary, it is in testimony, that she was running away whilst the libellants were engaged with the enemy; and now claims a share of the prize, as having been in sight at the time of the capture. The right under which a vessel in sight may claim a share of a prize taken, is founded in a presumption of law, which supposes a vessel so in sight, and armed, and prepared for battle, to have induced a surrender. A presumption of law is a legal indulgence, and ought to be strictly confined within the reason of the presumption. But no authority has been adduced to shew that this indulgence has been extended to a vessel not commissioned to take, unarmed, and flying from the scene of action. The Livingston cannot claim under the presumption of law, not being within the description; nor the United States under the general doctrine; because the prize was in fact taken by vessels duly authorized to take, which the Livingston was not. I adjudge, therefore, that the claim in this cause be dismissed, and that the brig Recovery be condemned as prize to the libellants.

FREARY (TUNNO v.).  See Case No. 14,238.

## Case No. 11,380.

### PREBLE v. PORTAGE COUNTY.

[8 Biss. 358.] [1]

Circuit Court, W. D. Wisconsin.  Dec., 1878.

MUNICIPAL BONDS — BONA FIDE HOLDER — LIS PENDENS—RES JUDICATA.

1. The mere fact that some of the interest coupons were overdue at the time of plaintiff's purchase, is not sufficient to put him upon inquiry, or charge him with notice of any defenses to the bonds, especially, where, during the time these coupons were running, the negotiation of the bonds had been restrained by an injunction which was finally dissolved.

2. The pendency of a suit is not constructive notice to purchasers of negotiable paper, which is the subject of the suit.

3. Where a county had filed a bill against a railroad company and its trustee to restrain the negotiation of bonds issued by the county to the

[1] [Reported by Francis Hopkinson, Esq.]

[1] [Reported by Josiah H. Bissell, Esq.. and here reprinted by permission.]